IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

DEL RIO DIVISION

UNITED STATES OF AMERICA,      *  No. DR-15-CR-1211
                           *
        Plaintiff,        *
                           *
v                        *  APRIL 12, 2016
                           *
PETE PEREZ, ET AL,        *
                           *
        Defendants.      *  DEL RIO, TEXAS

----------------------------------------------------------------

TRANSCRIPT OF GROUP STATUS CONFERENCE

BEFORE THE HONORABLE ALIA MOSES

UNITED STATES DISTRICT JUDGE

----------------------------------------------------------------

Proceedings recorded by mechanical stenography.  Transcript
produced by Computer-Aided transcription.

1                        **A P P E A R A N C E S**

2

3    FOR THE GOVERNMENT:          UNITED STATES ATTORNEY'S OFFICE
                                  BY:  MR. RALPH PARADISO
4                                 Assistant U.S. Attorney
                                  111 E. Broadway, Suite 300
5                                 Del Rio, Texas  78840

6

7

8    FOR THE DEFENDANTS:

9    PETE PEREZ (1)                BY:  MR. BRISTOL MYERS

10   MICHAEL RAY ARRIAGA, JR. (2)  BY:  MR. RAFAEL LEAL

11   BILLY RAMIREZ (3)             BY:  MR. RAYMOND MEZA

12   JAMES MARTY LONG (4)          BY:  MR. SOSTENES MIRELES

13   GONZALO NANDIN (22)           BY:  MR. PATRICK B. MORAN

14   MARCO ANTONIO MARTINEZ (5)    BY:  MR. BRANDON TODD HUDSON

15   ADRIAN SILVA (6)              BY:  MR. JAD HARPER

16   JOE PIERCE (7)                BY:  MS. KRISTEN MULLINER

17   JORGE AGUERO (8)              BY:  MR. REGINALD VAN WADE

18   GREGORY HILL (10)             BY:  MR. DANIEL McCARTHY

19   CRYSTAL PIERCE (12)           BY:  MR. GARY VILLARREAL

20   JACOB MARISCAL (13)           BY:  MR. CHARLES JOHNSON

21   MICHAEL ANTHONY HILL (14)     BY:  MR. JACK STERN

22   JOSE RIOS (16)                BY:  MR. GERALD MOTON

23   JOHN ANDREW SILVA (17)        BY:  MR. EDGAR JUAREZ

24   ESMEREJILDO BALDERAS          BY:  MR. JESSE CORONADO

25   GEORGE ANTHONY GARZA (20)     BY:  MR. GREGORY TORRES

1    ALFREDO MARTINEZ (21)      BY:  MR. GENARO CORTEZ

2    JAKE MENDOZA (15)          BY:  MR. CASE DARWIN

3    ABRAM URBINA (18)          BY:  MR. THOMAS HILLE

4    EDMUNDO HILL (9)           BY:  MR. CHARLES KING

5    RODOLFO RODRIGUEZ (11)     BY:  MS. MARISA BALDERAS

6    MANUEL ROSARIO-PEREZ (23)  BY:  MR. ALFRED RAMIREZ

7

8                        *  *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (10:21:48 A.M., START TIME)

2         THE COURT:  Okay, we've got the conference in the

3    cases that we did not need for defendants to be present.

4              I'm going to start with DR-15-CR-1211, the United

5    States versus Defendant -- Defendant Number One, Pete Perez.

6              AUSA PARADISO:  Ralph Paradiso for the United States

7    Government, Your Honor.

8         THE COURT:  Okay.

9         MR. MYERS:  Bristol Myers for Mr. Perez.

10        THE COURT:  And then I have Defendant Number Two,

11   Michael Ray Arriaga, Junior.

12             Defense counsel for Mr. -- Mr. Leal?  Where is

13   Mr. Leal?

14             Ms. Green, find Mr. Leal.

15             Defendant Number Three, Billy Ramirez.

16             Where is Mr. Meza?

17             There's Mr. Meza.  I see Mr. Meza.

18             Okay, Mr. Meza, I just called Mr. Ramirez's case,

19   but you're here.

20        MR. MEZA:  Ray Meza for Mr. Ramirez.

21        THE COURT:  All right.  And then I have Defendant

22   Number Four, James Marty Long.

23        MR. MIRELES:  Sostenes Mireles for Mr. Long.

24        THE COURT:  Defendant Number 22, Gonzalo Nandin.

25             I see Mr. Moran here.  Mr. -- do I see him?  Yeah.

Uh-huh.

Mr. Moran, you're here for --

MR. MORAN:  Yes, Your Honor.

THE COURT:  -- Mr. Nandin --

MR. MORAN:  Here, Your Honor.

THE COURT:  And then I've got Defendant Number Five, Marco Antonio Martinez.  I saw Mr. Hudson.

MR. HUDSON:  That's me, Your Honor.  Brandon Hudson.

THE COURT:  Okay.  Defendant Number Six, Adrian Silva.

MR. HARPER:  Jad Harper for Adrian Silva.

THE COURT:  Defendant Seven, Joe Pierce.

MS. MULLINER:  Kristen Mulliner for Mr. Pierce.

THE COURT:  Defendant Number A -- Eight, Jorge Aguero.

MR. VAN WADE:  Reginald Van Wade for Mr. Aguero, Your Honor.

THE COURT:  Defendant Number Ten, Gregory Hill.

MR. McCARTHY:  Dan McCarthy for Mr. Hill.

THE COURT:  Defendant Number 12, Crystal Pierce.

MR. VILLARREAL:  Gary Villarreal for my client, Your Honor.

THE COURT:  Defendant Number 13, Jacob Mariscal.

Where is Mr. Johnson?

COURTROOM DEPUTY:  We're running a few minutes early, Judge.

THE COURT:  Oh, is that it.  Okay.  If Mr. Johnson is

1  in the courthouse.

2         Defendant Number 14, Michael Anthony Hill.

3         Okay, I found Mr. Stern.

4         Defendant Number 16, Jose Rios.

5  MR. MOTON:  Gerald C. Moton for Jose Rios.

6  THE COURT:  Defendant Number 17, John Andrew Silva.

7  MR. JUAREZ:  Edgar Juarez for Mr. Silva, Judge.

8  THE COURT:  Defendant Number 19, Esmerejildo Balderas.

9  MR. CORONADO:  Jesse Coronado for Mr. Balderas.

10  THE COURT:  Defendant Number 20, George Anthony Garza.

11        Mr. Torres is here.

12  MR. TORRES:  We're present.

13  THE COURT:  And Defendant Number 21, Alfredo Martinez.

14  MR. CORTEZ:  Genaro Cortez for Mr. Martinez.

15  THE COURT:  Okay.  Defendant Number 15, Jake Mendoza.

16  MR. DARWIN:  Case Darwin on behalf of Mr. Mendoza.

17  THE COURT:  Defendant Number 18, Abram Urbina.

18  MR. HILLE:  Thomas Hille.  Ready.

19  THE COURT:  Defendant Number Nine, Edmundo Hill.

20  MR KING:  Charles King for the defendant.  We're

21  ready.

22  THE COURT:  Defendant Number 11, Rodolfo Rodriguez.

23        Okay, Ms. Balderas, see if she's in the courtroom.

24        Defendant -- or courthouse.

25        Defendant Number 23, Manuel Rosario-Perez.

1          MR. RAMIREZ:  Alfred Ramirez on behalf of Mr. Rosario.

2          THE COURT:  Okay.  Mr. Leal is -- we're waiting for

3     Mr. Leal and Ms. Balderas.  I think everybody else is here.

4          AUSA PARADISO:  And Mr. Johnson.

5          THE COURT:  And Mr. Johnson.  I don't know

6     Mr. Johnson.

7          AUSA PARADISO:  I think I saw Ms. Balderas go into

8     Judge Garcia's courtroom.  Orlando Garcia.

9          THE COURT:  Could be.  While we wait for these other

10    counsel to appear, let me hear where everybody is in terms of

11    discovery, in terms of sit -- situational awareness of where the

12    case is, the posture of the case.

13         MR. MYERS:  Speaking for Mr. Perez, Your Honor, I've

14    been able to meet with the U.S. attorney, spend a full day

15    getting discovery, couple of three-ring binders, probably about

16    three inches thick each.  I've been able to go through those,

17    offense reports from Uvalde PD, as well as the federal

18    investigating agencies.  There's some wiretaps that I still need

19    to listen to, I think some photos and things that were in the

20    discovery room that I didn't -- didn't get through in a single

21    day, but making progress.

22         THE COURT:  Okay.  Who -- is anybody else in a

23    different posture with discovery other than what Mr. Myers has

24    just indicated?

25         MR. TORRES:  I just have one question, really.  All

1  the discovery that will be coming, is that -- what -- what's

2  there is that all we're going to have or are we waiting -- last

3  time I had a chance to see -- there's some participation in my

4  client's as well.  I just don't know if -- are we expecting more

5  at this point or -- or kind of where are we at?

6          AUSA PARADISO:  Your Honor, the government's made

7  available what we have in front of us or what we have in our

8  possession.  We've reached out since a lot of the arrests were

9  done in some of the various cities throughout the state.  We've

10 reached out to the agencies that are there and some of the

11 local/state agencies that participated in the searches to see if

12 they have anything else.

13         So, at the moment I don't believe so, but I -- I

14 can't say for sure anything else would be forthcoming.  We --

15 we're trying to gather from that if they made any reports or

16 anything like that.

17         THE COURT:  Okay.  I see Ms. Marisa -- Ms. Balderas

18 just walked in.  We're running just a little bit early.  I'm

19 just trying to get a feel for where everybody is, Ms. Balderas.

20         AUSA PARADISO:  So I -- does that answer --

21         MR. TORRES:  It does.  Thank you.

22         AUSA PARADISO:  No problem.

23         MR. TORRES:  I thought -- I thought the others were

24 waiting for all this stuff that we know is coming, that we're

25 not waiting for anything we know is coming.  Possibility of it

exploding up, but 99 percent of what we expect to see is what's
in the room?

AUSA PARADISO:  I believe so, yes.

MR. TORRES:  That answers my question, Your Honor.

(BRIEF PAUSE)

THE COURT:  Okay, Mr. Johnson ignored the Court's
order to be here.  We'll take care of that at a later time.

MR. McCARTHY:  Judge, my name is Dan McCarthy, on --

THE COURT:  Uh-huh.

MR. McCARTHY:  -- behalf of Greg -- Gregory Hill.

THE COURT:  And I have your motion as well here before
me.

MR. McCARTHY:  Okay.

THE COURT:  Uh-huh.  Yeah.  Go ahead.

MR. McCARTHY:  That's -- that's been my position on
discovery in the case.  And so I didn't know, would -- would the
Court like to consider that motion or...

THE COURT:  Well, but here's the situation.  You're
basically asking for me to force the government to move or give
you copies of everything that's under protective order.  That
will not happen, Mr. McCarthy.  You're going to have to come see
it down here.

MR. McCARTHY:  I -- I have.  I have, Judge.

THE COURT:  Okay.

MR. McCARTHY:  But there's -- I'd just like to make

1    the Court aware that I made my initial review of the materials.

2    There's over 120 HSI reports, 25 to 30 police reports, three

3    three-ring binders that are about two to three inches thick.

4    It's a lot of documents, a lot of information.

5              THE COURT:  Uh-huh.

6              MR. McCARTHY:  And what I would ask the Court to do

7    is -- is to allow us to view it.  Allow -- allow us to view it,

8    of course, but then also if there's copies that we need of any

9    of those materials, if the government could provide us copies --

10             THE COURT:  You won't be able to keep them,

11   Mr. McCarthy.  You're being provided copies in the three-ring

12   binders, but you're not going to be able to keep them because of

13   the Court's protective order.

14             MR. McCARTHY:  Right.  But I -- I read your court

15   protective order, Judge --

16             THE COURT:  Uh-huh.

17             MR. McCARTHY:  -- and it -- and it doesn't address

18   that we're not allowed to be provided copies of them.  It just

19   says that --

20             THE COURT:  Well, let me put it --

21             MR. McCARTHY:  -- we're not going to be able to

22   keep -- give them to our -- our clients or any other third

23   parties --

24             THE COURT:  Right.  And part of the --

25             MR. McCARTHY:  And that's fine.

1          THE COURT:  -- part of the problem has been,

2     Mr. McCarthy, in the past with these type of cases, what has

3     happened is defense counsels have allowed the copies to go out.

4     Not anybody in this group.  They've given copies of CDs to

5     clients, families of clients, and that's why the need for the

6     protective order.  And that's the issue.

7          MR. McCARTHY:  Right, Judge.  And I think there's a --

8     a very simple fix for that, at least for the PDF copies.  And

9     that's what I'm talking about priority -- primarily, is a copy

10    of police reports, copy of the HS -- HSI reports, is the

11    government can easily provide scanned copies of those or provide

12    PDF copies with watermarks placed on it as -- with my name, my

13    firm on it.  That's a copy was given with me -- to me by the

14    government with my firm name on it in the background, and so

15    when -- if that's ever reproduced or if that gets out anywhere,

16    it has my name on it and you'll know exactly where -- where to

17    go to -- to see where it got -- you know, came from.

18          So there are -- there are remedies to provide, you

19    know, the --

20          THE COURT:  So what's the problem with just bringing

21    your client from San Antonio to Del Rio?

22          MR. McCARTHY:  He's in GEO.

23          THE COURT:  Right.  So what --

24          MR. McCARTHY:  And --

25          THE COURT:  -- why would -- why would that be a

1  burden?

2      MR. McCARTHY:  Well, it's -- it's just that I'm --

3  I'm -- I've got all this material I'm trying --

4      THE COURT:  Uh-huh.

5      MR. McCARTHY:  -- to make notes from, and then --

6      THE COURT:  Uh-huh.

7      MR. McCARTHY:  -- trying to go back and forth with it.

8  That -- it's -- it'd be a lot easier, a lot more expedient if

9  I'm able to get a copy of the material --

10      THE COURT:  Uh-huh.

11      MR. McCARTHY:  -- because there is so much of it.  And

12  I've -- I've laid out exactly in my motion, Judge, the -- the

13  specific things that relate to my client.

14      THE COURT:  Uh-huh.

15      MR. McCARTHY:  And there's about ten HSI reports, six

16  police reports.

17      THE COURT:  The -- the problem is this, Mr. McCarthy,

18  is that technically you're not entitled to those documents under

19  Rule 16 to begin with.

20      MR. McCARTHY:  I thought --

21      THE COURT:  You're entitled to the -- your client's

22  statements, but not to the statements of all of the witnesses.

23  So you're getting more discovery than is required by the Court's

24  order in the rules, and now you're asking me to order the

25  government to give you copies of those.

1          MR. McCARTHY:  Right, Judge.  That's right.  And --

2     and basically because --

3          THE COURT:  I don't have the authority to do that,

4     Mr. McCarthy.

5          MR. McCARTHY:  This is a different type of case, and

6     so it's a large case --

7          THE COURT:  Uh-huh.

8          MR. McCARTHY:  -- lot of --

9          THE COURT:  Uh-huh.

10         MR. McCARTHY:  -- lot of defendants, co-defendants --

11         THE COURT:  Uh-huh.

12         MR. McCARTHY:  -- and a lot of material, so...

13         THE COURT:  No, I'm -- I'm aware of that.  Sure.

14    Absolutely.

15         MR. McCARTHY:  And -- and it's provided in -- and

16    frankly, I've had other types of cases where we've had large

17    cases like this it's been provided, we didn't have a problem

18    with it.  So I -- that's why --

19         THE COURT:  If the government wants to provide it to

20    you, Mr. McCarthy, they're not going to get a fuss from me, but

21    I don't have the legal authority to -- to order it under

22    Rule 16.

23         MR. McCARTHY:  I understand.

24         THE COURT:  I mean -- I mean, frankly, if other judges

25    order it, that's fine.  And if the government complies, that's

1    fine, but we technically don't have that legal authority.

2    Because Rule 16 doesn't -- doesn't require the government to

3    give up non-client statements, or expert reports, or pictures,

4    things of that nature.

5            Now, the -- the wiretaps, you are entitled to get

6    some of the wiretap information so that you can file any of your

7    proposed motions to suppress any wiretaps, anything that you

8    wanted to do in terms of that.  But in terms of the HSI reports,

9    I can't order the government to compel those.

10           AUSA PARADISO:  Your Honor?

11           THE COURT:  Mr. Paradiso, how much of that --

12           AUSA PARADISO:  For the wiretaps, you had ordered us

13   to keep it here --

14           THE COURT:  Yeah.

15           AUSA PARADISO:  -- and that's what we've done.  And

16   we've made all that available and the affidavits, per your

17   orders, to defense counsel.

18           THE COURT:  Right.

19           MR. McCARTHY:  Then at least copies of the wiretap

20   materials, Judge.

21           AUSA PARADISO:  Your Honor, the government would

22   object to turning over the affidavits to the defense counsel

23   because it has -- information can be leaked as to the sources in

24   the -- that his clients and others would be able to identify the

25   sources of that information.

1       This gang has retaliated against individuals who
2   have spoken to police, so we ask that that material, once again,
3   be viewed here.
4           MR. McCARTHY:  Judge, this -- like I said, if he gives
5   us the information, he can watermark that information that we
6   got it, we can review it, have time to review it.
7           THE COURT:  So the bottom line, though, Mr. McCarthy,
8   is you're just basic -- basically asking for copies for -- for
9   your convenience, in essence.
10          MR. McCARTHY:  Well, not -- not -- it's not just
11  convenience, it's the ability to adequately prepare.
12          AUSA PARADISO:  Your Honor?
13          MR. McCARTHY:  I -- I mean, this -- this lawyer gets
14  to go back to his offices, review this information at will on --
15          THE COURT:  And that lawyer has the burden of proof.
16          MR. McCARTHY:  Right.  And then on my defensive
17  issues --
18          THE COURT:  Uh-huh.
19          MR. McCARTHY:  -- that I'm entitled to documents on,
20  whatever they may be, whatever the Court allows, then I should
21  be able to have the same right to have those materials in my
22  office to review at my will.  If -- in other words, the wiretap
23  materials, I'm entitled to them, but then I should be able to
24  get a copy of them and -- and review those like -- like the
25  government's attorney can.  So it's not a dis -- I'm not at a

1  disadvantage.

2          THE COURT:  But you're entitled to --

3          MR. McCARTHY:  And I'm being --

4          THE COURT:  You're entitled to -- to review them as

5  much as -- as often as you want.  You're just not going to be

6  able to do it in the convenience of your office, Mr. McCarthy.

7  You're -- you're entitled to view them and -- and have -- and

8  review them and make notes off of them and all of that type of

9  information.

10          I -- I guess I'm a little bit confused in terms of

11  defensive posture issues.

12          MR. McCARTHY:  Defensive posture?

13          THE COURT:  Yeah, you were saying for purposes of --

14  of your defense.

15          MR. McCARTHY:  Well, I -- I mean it's difficult -- in

16  other words, you -- you go -- you go in and you study a

17  document --

18          THE COURT:  Uh-huh.

19          MR. McCARTHY:  -- and maybe this document, when you

20  think about it later, relates to something else that you need to

21  look at another document for, like he's going to be doing,

22  and -- and then you go back and you don't have that any more.

23  And then -- and then maybe I didn't make a note on that

24  particular document, and now I've got to go back and re-review

25  that document, come back to Del Rio, re-review those documents,

1    and go back and forth, when if I had it in my -- in my

2    possession I could look at this one, I can look at that, you

3    know, make a review and -- and prepare a defense for my client.

4              So that's -- that's the -- the essence of it.  I

5    mean, just like he's doing when he's bringing case -- the case

6    forward.

7              THE COURT:  But it's a big difference, Mr. McCarthy.

8    He's got the burden to prove --

9              MR. McCARTHY:  Right.

10              THE COURT:  -- your client guilty.

11              MR. McCARTHY:  Right.  But I'm talking about --

12              THE COURT:  You don't have to prove that he's

13    innocent, so there's a big difference on that.

14              MR. McCARTHY:  The difference, though, is, too, Judge,

15    I do have to be able to mount a defense, and so...

16              THE COURT:  Sure.  But you're not going to be able to

17    necessarily do it by introducing the HSI reports, because that's

18    hearsay.

19              MR. McCARTHY:  Right.  I -- I understand that.

20              THE COURT:  And so that -- that's the question.  And

21    my question is:  At which point do I properly strike the balance

22    between protecting the lives of potential people who have given

23    testimony --

24              MR. McCARTHY:  Right, Judge.

25              THE COURT:  -- for the convenience of the parties?

1      MR. McCARTHY:  It -- and it's not -- it's -- it's
2  convenient, yes, but it's also being able to adequately prepare.
3  And there's -- there's a safeguard to that, where you could
4  actually just watermark it so that you know where those
5  documents came from.  If they ever got out, it would --
6      THE COURT:  But we --
7      MR. McCARTHY:  And we're at the --
8      THE COURT:  -- have a safeguard --
9      MR. McCARTHY:  -- we're in the same --
10      THE COURT:  -- Mr. McCarthy.
11      MR. McCARTHY:  -- we're in the same parity as far as
12  truthfulness and trustworthy.
13      THE COURT:  Sure.
14      MR. McCARTHY:  We're both officers of the court.  I am
15  just like the government's attorney is.  And so when the Court
16  orders me not to turn it over to my client, I'm not going to do
17  it.
18      THE COURT:  Right.  And I know that.
19      MR. McCARTHY:  And -- and so if that -- you know, if
20  that's the Court's concern, I appreciate that.
21      THE COURT:  If I do it for you, Mr. McCarthy -- and
22  I'm -- I'm not meaning to impugn anybody's character here before
23  me -- but I'm going to have to do it for everybody.  And at
24  which point, then, does my protective order become null and
25  void?  At that --

1          MR. McCARTHY:  It doesn't.

2          THE COURT:  It does.  At that point it does.

3          MR. McCARTHY:  Because every lawyer would have his --

4    his watermark with his name on those documents if they got out.

5          THE COURT:  We're just talking convenience at this

6    point, Mr. McCarthy.  I'm not seeing a need to compel anything

7    at this point.  However, if the needs change as we go further on

8    down the road, this is not going to be denied with prejudice.

9    So just keep that in mind.

10         But at this point, I'm not going to compel the

11   government to reproduce every part of their evidence to give up

12   when it is available to everybody on an as-need basis, except

13   that it's going to be here in Del Rio.

14         MR. McCARTHY:  Well, I think I've beaten the dog to

15   death, Judge, so...

16         THE COURT:  But it's -- it's --

17         MR. McCARTHY:  I don't have anything to say.

18         THE COURT:  But here's -- Mr. McCarthy, it's denied

19   without prejudice.

20         MR. McCARTHY:  Okay.

21         THE COURT:  So you can always reapproach the Court as

22   things change.  Anybody can reapproach the Court as things

23   change.

24         MR. McCARTHY:  I just think I'm in a really tough

25   position here of -- of -- because -- because I'm out of

1   San Antonio, and to come here it -- it takes time --

2            THE COURT:  Uh-huh.

3            MR. McCARTHY:  -- three and a half hours to get here,

4   and then review it.  I spent five hours in there and only got

5   about -- through half of it.  And that was a quick read.  That

6   was a scanning to see where my client's name came up, how it may

7   be related --

8            THE COURT:  Uh-huh.

9            MR. McCARTHY:  -- to something else, and then I made

10  notes as to what I needed.  That's going to be a -- it's just

11  going to be tough to provide --

12           THE COURT:  Honestly, Mr. McCarthy --

13           MR. McCARTHY:  -- on a basic defense.

14           THE COURT:  -- with the exception of three lawyers --

15  four lawyers, everybody's from out of town.

16           MR. McCARTHY:  Right.  That's -- and that's why even

17  more we would need that information, Judge, because it --

18           THE COURT:  I get it, Mr. McCarthy.  We're not

19  reproducing the whole volume of the government's file.  The

20  Court's not going to order it.  First of all, as I said, under

21  Rule 16, I do not have the authority to order anything that's

22  outside of Rule 16.

23           MR. McCARTHY:  And -- and I'm just asking, whatever

24  you're -- you're allowed to order, order that copies be made

25  available and that you watermark them with our -- with my name

1  on them, if they're given to me and so I can have them and take

2  them to my office and prepare just like counsel for the

3  government is going to be doing.

4         AUSA PARADISO:  Your Honor, pursuant to Rule 16, the

5  government has provided to each defense counsel discovery that

6  the government would be entitle -- or is required to provide to

7  them that is currently in our possession, absent of those items

8  that Her Honor has already put under a protective order.

9         For instance, if any of their clients gave a

10 statement to authorities at the time of their arrest, we have

11 provided copies of those, if we have them in our possession, and

12 we will continue to do so if any more come into our possession.

13        THE COURT:  Okay.  And everything else -- I'm -- I'm

14 assuming there is no grand testimony of any defendant that would

15 be required.

16        AUSA PARADISO:  No, Your Honor.

17        THE COURT:  I am assuming the government has given up

18 all of the notice for the expert testimony that may be expected.

19        AUSA PARADISO:  Not yet on the notice, Your Honor, but

20 we will.

21        THE COURT:  And then the -- I'm trying to think of --

22 books, pictures, documentary evidence that the government is

23 relying on.

24        AUSA PARADISO:  Yes, Your Honor.  That is all in our

25 room, if we have it.  Or if it was -- for instance, for some of

1  the defendants, there were searches done on the houses.  We

2  provided the copies of that information to that defendant's

3  counsel.  We've also made that available in the room for the

4  other counsel to come view if they wanted to look at it.

5          THE COURT:  Okay.  So, Mr. McCarthy, have you received

6  that as to your client, whatever would apply to your client

7  under Rule 16?

8          MR. McCARTHY:  The only thing I've received is his rap

9  sheet and what he's been convicted of, so that's -- that's what

10  I've got so far.

11          THE COURT:  Okay.  Because I'm assuming he didn't give

12  a statement that would fall under Rule 16, so you wouldn't have

13  gotten that at that point.  What else?

14          AUSA PARADISO:  Yes, Your Honor.  As far as I know, he

15  has not, but we're double-checking with all the agencies in case

16  they have done that.

17          THE COURT:  Okay.

18          MR. McCARTHY:  And I don't know if he has.  I don't

19  know if he has.

20          THE COURT:  Okay.

21          MR. MYERS:  And, Your Honor, with respect to the --

22  the copies of discovery, I'm -- I'm coming all the way from

23  Austin to come down here.  Is it possible that the government

24  could digitize the offense reports and leave copies, say, at

25  their office in San Antonio or their office in Austin?  I'd be

1    willing to come down to San Antonio and meet them halfway if I

2    could -- wouldn't have to come all the way down here to -- to

3    review the discovery.  Not that -- not that I mind coming down

4    here, but...

5           THE COURT:  The garden spot of Texas?  Why would y'all

6    mind?  The best barbecue, Mexican food, what -- so what's the

7    problem here?

8           AUSA PARADISO:  But that way the -- if we -- if

9    they -- if they kept duplicate copies at their office in

10   San Antonio, their office in Austin, then we could easily access

11   them more frequently.

12          THE COURT:  It's going to be up to the government, if

13   they're willing to do that.

14          AUSA PARADISO:  Your Honor, I would -- I would have to

15   check with our folks.  I -- I don't believe they're going to be

16   willing to do that, but I -- I don't have a problem asking.  But

17   I -- I don't have control over those other offices.  They are

18   run separately.  I can ask of the --

19          THE COURT:  Because I think if -- if that were to

20   happen, also Mr. McCarthy's issues would be ameliorated to a

21   certain extent.

22          AUSA PARADISO:  Yes, Your Honor, and I -- and I can

23   ask.

24          MR. McCARTHY:  And -- and that is true, Judge.  I mean

25   it's just like -- it's just like a San Antonio case, then.

1          THE COURT:  No, Mr. McCarthy.

2          MR. McCARTHY:  Well, I mean in the sense --

3          THE COURT:  Let me make something real clear.  This is

4    not just like a San Antonio case.

5          MR. McCARTHY:  I know.  I meant on looking at

6    discovery only.

7          THE COURT:  Mr. Moton, did you have --

8          MR. McCARTHY:  I know I'm not in Kansas anymore.

9          MR. MOTON:  Your Honor, if I can just comment.  Your

10   Honor, I have a San Antonio RICO case where we have a protective

11   order.  It's a large Mexican drug organization.

12         THE COURT:  And thank God it didn't get transferred to

13   Del Rio.

14         MR. MOTON:  Well, no.  I -- I -- no.  No, the point

15   is --

16         AUSA PARADISO:  He may have just invoked it,

17   Your Honor.

18         MR. MOTON:  We have -- there is a protective order,

19   we -- in -- in place, similarly, but we have 37 CDs that were

20   provided to us in that particular case, which does facilitate --

21   it makes it easier to address some of the issues that

22   Mr. McCarthy is --

23         THE COURT:  Okay, but that's a San Antonio case, so

24   you're going to have the discovery in San Antonio.  It would be

25   as if the -- a Del Rio defense attorney was on that case and

asking for it to be all copied and sent to Del Rio for the --

MR. MOTON:  No, no.

THE COURT:  -- proceeding.

MR. MOTON:  What I'm saying is that --

THE COURT:  Although, I will say this, Mr. Moton, like I said, with the exception of a few attorneys, most of you are out of San Antonio, slash, Austin in terms of this particular case, or Eagle Pass for the most part, or San Angelo.  So you don't have a local bar predominating this particular case.  So it's going to be something that would be very beneficial in terms of moving the case faster, if something could be done to facilitate the discovery process.

AUSA PARADISO:  Yes, Your Honor.  As I said, I will ask but I -- I don't have --

THE COURT:  Ask very stringently, Mr. Paradiso.

AUSA PARADISO:  I -- I will try, Your Honor.

THE COURT:  I encourage you to do so.

AUSA PARADISO:  My only concern is as we update one, we have to update the others, then there's a potential of certain things not getting put in, and then defense counsel complaining about that.

THE COURT:  That's -- that's the only thing, is y'all run the risk potentially of that, if it doesn't get to all of the offices.  But it would be here.  And so ultimately you would -- might have to return to Del Rio to check every so often

1  to make sure you had a complete view of everything.

2          AUSA PARADISO:  But I -- I will ask, Your Honor.

3          THE COURT:  Yes, sir?

4          MR. HUDSON:  Your Honor, Brandon Hudson for Marco

5  Martinez.  I don't know if it's possible, but with some child

6  pornography cases, there's some jurisdictions that can put it on

7  like a server and we can access it with a password only, but we

8  can't print.  Not for the -- not for the actual photos, but for

9  the reports concerning who the children are, their identities.

10          I don't know if the government -- they -- I know the

11  agents have that ability within themselves, access information

12  from different offices, password, can't print.  I mean, if you

13  ever do, it's able to be located like the watermark, the

14  digital.  Is that something that could be done here, where we

15  could all have access, independent, completely --

16          AUSA PARADISO:  Once again, there's a -- there's a

17  number of different agencies that are on it.  I -- I don't know.

18  All I can do is ask, Your Honor.  I --

19          THE COURT:  Well, here's the question:  How many of

20  these reports are in physical form first versus digitized

21  already?  I -- I -- and the reason I'm asking is because I know

22  you have a lot of the local police force reports and I know

23  they're probably not going to be digitized.

24          AUSA PARADISO:  They are not.

25          THE COURT:  Unless y'all have scanned it.

1        AUSA PARADISO:  We've scan -- we've scanned

2   everything, Your Honor, so we could redact out birthdates and

3   personal -- PII.  So everything at the moment is kind of

4   digitized.

5        THE COURT:  So it would be -- it could be uploaded to

6   a particular server network?

7        AUSA PARADISO:  It could up -- be uploaded into our

8   server there at the U.S. Attorney's Office.  I don't know if

9   Mr. Hudson -- what -- what he's talking about.  I've never used

10  that before here, so I don't know.  I assume that's with FBI or

11  HSI or something like that.  I know they're able to see within

12  their servers --

13       THE COURT:  Well, HSI is going to be your major --

14       AUSA PARADISO:  Yes, Your Honor.

15       THE COURT:  -- agency here.

16       AUSA PARADISO:  But I don't know what --

17       THE COURT:  Check with HSI.

18       AUSA PARADISO:  Yes, Your Honor, and I will.

19       THE COURT:  They can do it for child pornography

20  cases.  They're the investigating agency for child pornography

21  cases --

22       AUSA PARADISO:  They don't --

23       THE COURT:  -- HSI.

24       AUSA PARADISO:  As far as I know, they don't hook it

25  up to a server.  They have the drives and they put this

1  little -- what's called a "slave drive" into the thing.  They

2  don't put everything up on the server.  So -- but I -- I will

3  check, Your Honor.  I don't mind checking.

4          THE COURT:  But it --

5          MR. HUDSON:  I'm not -- and if -- if I misstated, I

6  apologize there.  I'm not talking about the actual photographs

7  of the child pornography, but like --

8          THE COURT:  No, no, I'm -- you didn't.  I'm just

9  saying -- I'm talking about the system as opposed to what's put

10 on it.

11         MR. HUDSON:  In the Houston District, with these cases

12 out of the Southern District, it's -- just an example, they have

13 an ability where we can tap into there and read the reports

14 online.

15         THE COURT:  But are we -- are you talking HSI?

16         MR. HUDSON:  I -- I think it would be HSI that -- I

17 know FBI has done some of them.  I'm trying to remember the case

18 we had which was HSI, but it was just the child pornography

19 production.  Same ones that kind of pop up in all districts,

20 with the sharing -- Ares sharing program.  But it -- but it

21 allows us to see the reports of the officers that are -- we're

22 not allowed to scan or print.

23         MR. MOTON:  And it does -- it prohibits you from

24 printing.

25         AUSA PARADISO:  But you can go to the office, correct?

1          MR. HUDSON:  No, no.  There's a portal that you can
2   tap into through the web to secure.
3          THE COURT:  Find out, Mr. Paradiso --
4          AUSA PARADISO:  Yes, Your Honor.
5          THE COURT:  -- because that may solve a lot of issues.
6          MR. MOTON:  Yeah, it -- it prohibits you from actually
7   printing it.
8          THE COURT:  You would have to take notes, you
9   wouldn't --
10          MR. MOTON:  Sure.
11          THE COURT:  -- have copies, but you would have access
12   from your desk at your office.
13          MR. MOTON:  Right.  Right.
14          MR. TORRES:  And each person has their own password so
15   you know who's viewing who.
16          AUSA PARADISO:  I'll check, Your Honor.  It actually
17   makes it easier for us, too, in our office.
18          THE COURT:  Yeah.  It makes it easier, then you don't
19   have to worry about having somebody available, and they have to
20   come during 8:00 to 5:00.  If they want to look at it at
21   midnight, if that's when they work, they can take care of it at
22   midnight.
23          AUSA PARADISO:  Yes, Your Honor.  I have no problem
24   with that.
25          THE COURT:  Okay.  Well, let's talk about pretrial

1   motion deadlines.  I haven't given you -- I -- I think I told

2   everybody don't worry about pretrial motions.  At this point,

3   you're not going to be bound to the 20 days from the date of

4   arraignment kind of issue because this is more complex.

5            So let's talk about what would be a viable deadline

6   for filing of pretrial motions.  Since everybody's still in the

7   viewing discovery stage.

8            My suggestion would be pretrial motion deadline be

9   June the 14th.  That's -- that's roughly two months, at a

10  minimum right now.

11           I'm banking on the government finding out very

12  quickly about making these other matters available.

13  San Antonio, Austin, slash, network.

14           Anybody have an issue with that?  Mr. Mireles?

15           MR. MIRELES:  Judge, I would -- I would ask maybe for

16  an extra month, being that --

17           THE COURT:  There's not that much y'all want to have

18  to say to me, Mr. Mireles, truly, right?

19           MR. MIRELES:  I'm sorry?

20           THE COURT:  There's not that much you want to write to

21  me, right?

22           MR. MIRELES:  You know, I -- I -- I would tend to

23  agree audio -- the audio is one thing.

24           THE COURT:  Uh-huh.

25           MR. MIRELES:  It's one -- it's one beast --

1    THE COURT:  Uh-huh.

2    MR. MIRELES:  -- when you're listening, and then

3    the -- the written report is a whole other thing.

4    THE COURT:  Uh-huh.

5    MR. MIRELES:  So you're not just having to go --

6    you're not just going to GEO and stuff, you're having to go

7    listen to this stuff.  And we're going to have to make like four

8    or five trips down there.

9    AUSA PARADISO:  And Your Honor?

10    THE COURT:  Uh-huh.

11    AUSA PARADISO:  For the record, what we're doing is

12    we're making all the transcripts that we know of that are

13    pertaining to that individual person, or their client, we're

14    handing those to them so they don't have to go search through

15    everything to look for that.  So we're making that available to

16    each individual.

17    Additionally, compared to the Texas Syndicate case,

18    there's a 25th of the amount of discovery in this case to

19    review.

20    MR. MIRELES:  And the one problem I did have was I

21    was -- I had to -- I was going to call to schedule an

22    appointment to review the discovery when I was available, but

23    another attorney had already made an appointment for that day,

24    so I couldn't go that day.  So that's their problem, but we're

25    having --

1    THE COURT:  Then I suggest y'all do a really good job

2  of scheduling, Mr. Mireles.

3    MR. MIRELES:  I'm sorry?

4    THE COURT:  I said then I suggest y'all do a really

5  good job of scheduling.

6    AUSA PARADISO:  Yes, Your Honor.  And if the day is

7  not available, we will then tell the defense counsel what next

8  days are available for them to come view the --

9    THE COURT:  But see, Mr. Paradiso, all of that would

10  be ameliorated by making this stuff available in alternative --

11    AUSA PARADISO:  Yes --

12    THE COURT:  -- sites or alternative forms, because

13  then they wouldn't have to schedule anything.

14    AUSA PARADISO:  Yes, Your Honor, we'll look into that.

15  But I -- I don't, as I said, don't control that.  But we will --

16  I will look into it today.

17    THE COURT:  But you can control it, Mr. Paradiso.

18    AUSA PARADISO:  To a part, Your Honor.

19    THE COURT:  You -- you can control it, Mr. Paradiso.

20    AUSA PARADISO:  Yes, Your Honor.

21    MR. VILLARREAL:  Your Honor?

22    THE COURT:  So, Mr. Mireles, you're saying --

23      I'm sorry.  Go ahead, Mr. Villarreal.

24    MR. VILLARREAL:  No, no.  I was going to be on the --

25    MR. MIRELES:  I'm -- I'm saying --

1    MR. VILLARREAL:  -- say the same thing.

2    MR. MIRELES:  -- like -- more like a -- more like a

3 July date, Your Honor.  If we -- that'd be like 90 days.  There

4 is how many lawyers?  One, two --

5    THE COURT:  It's like 25.

6    MR. TORRES:  Plus the defendants.

7    MR. MIRELES:  Sixteen, 17 lawyers, you multiply

8 that --

9    THE COURT:  No, there's more than that --

10    MR. MIRELES:  -- times three --

11    THE COURT:  -- Mr. Mireles.  There's a whole lot more

12 than that.

13    MR. MIRELES:  Yeah.

14    THE COURT:  In this case it's like 25 or something.

15    MR. MIRELES:  Well, you multiply each lawyer times

16 three, that's three days of -- of reviewing discovery, that's

17 45 -- approximately 45 days already taken up.

18    THE COURT:  No, I'm saying, there -- you've got about

19 25 attorneys on this case, also.

20    MR. MIRELES:  Seventy-five, 80.

21    MR. TORRES:  And we'll probably be --

22    THE COURT:  Huh?

23    MR. TORRES:  Because we can't all be there --

24    MR. MIRELES:  We can't be there on the same day.

25    THE COURT:  The world's smallest violin, gentlemen.

1    This is like my third or fourth RICO case.

2            AUSA PARADISO:  Your Honor, and just for the record,

3    we would note from March 7th until today, only six attorneys

4    have come to review the discovery in this case.

5            THE COURT:  And I'm sure that -- I mean, I'm not -- I

6    think part of it, too, is the Court has been saying we got to

7    set it for a status conference, we're setting deadlines, we're

8    changing deadlines, things of that nature.  So, I'm not

9    particularly worried about any of that.

10            AUSA PARADISO:  Yes, Your Honor.

11            THE COURT:  Mr. Mireles, if I go to July the 14th,

12    that's a little over three months from today.

13            MR. MYERS:  Your Honor, could we maybe do a status

14    conference for June 14th --

15            THE COURT:  Uh-huh.

16            MR. MYERS:  -- and then we can come back and whine and

17    grovel and cry and talk about our discovery issues, make sure

18    we've got all that ironed out at that point, and then pick a

19    date, then, to do our pretrial motions.

20            THE COURT:  Mr. Myers, that's very reasonable, but one

21    thing I have found in my -- in my practice, that if I let y'all

22    do that, I promise somebody will come in groveling, whining and

23    asking for more time.  So I would rather give you a deadline,

24    then let you come in and ask for extra time than not because

25    it's -- there's certain -- you have certain expectations at that

point, than just having it open-ended.

But, yes, I can set it for another status conference for the June 14th docket call without your clients. Just the attorneys, so clients don't need to be here. We can --

AUSA PARADISO: That works for me personally, but I don't want to wear everybody else out coming for status conferences.

THE COURT: Well, in -- in these complex cases, we tend to have maybe two or three before things start getting set, so that's not an unusual question.

Yes, sir?

MR. MIRELES: Your Honor, I have a vacation notice for June 14th, on that date.

THE COURT: Mr. Mireles -- okay, you want to go on vacation, or do you want more time, or do you want to get discovery -- no, I'm just kidding. I'm -- I'm --

MR. VILLARREAL: I'll ride on the bandwagon with that.

MR. MIRELES: No, I -- I don't think we -- I would rather come back in May. Why would we --

THE COURT: Because May is less than a month today.

MR. MIRELES: Okay.

THE COURT: May -- but -- because the Fifth Circuit conference falls on the second week this year, I'm having to push docket call to May the 3rd. So you're already talking about maybe two and a half, three weeks for docket call. It

1  wouldn't -- it wouldn't make sense to have y'all come in for a

2  status conference then.

3         What we can do, though, Mr. Myers, at your request

4  in terms of the status conference, I can set the status

5  conference for the July docket call, which is July 12th.  I can

6  give you, right now, a pretrial motions deadline for July the

7  14th so that we -- on the 12th we can talk about where we are,

8  what motions I've received, what you've been able to review,

9  things of that nature.  Because I've got to give y'all a date

10 for hearings if any of these motions need a hearing as well.

11 And right now, I'm out the last two weeks of June trying a case

12 in Waco, so --

13         MR. MOTON:  Your Honor?

14         THE COURT:  Yes, sir.

15         MR. MOTON:  Your Honor, the other RICO case that I've

16 just been -- forgot to mention, starts -- it supposedly starts

17 on July the 11th, and I'm pretty sure it's going to go to trial.

18         THE COURT:  For trial?

19         MR. MOTON:  Yeah.

20         THE COURT:  Okay.  That's all right.  Mr. Moton,

21 just -- I'll keep that in mind --

22         MR. MOTON:  Right.

23         THE COURT:  -- so...

24         MR. MOTON:  If it goes.

25         THE COURT:  Yeah, right.  So let me keep this as it

 1  is, and then you keep me posted if it's still going to go and

 2  we'll -- we'll work around that for you on that.

 3          Yes, sir?

 4          MR. CORTEZ:  A few additional questions, Your Honor.

 5          THE COURT:  Uh-huh.

 6          MR. CORTEZ:  The last discovery I got from

 7  Mr. Paradiso was February 24th.  I think he sent out a group

 8  letter saying there was additional discovery.  I just wanted to

 9  confirm that if anything's been added to discovery since

10  February 24th.

11          THE COURT:  I would --

12          AUSA PARADISO:  Anything we have, Your Honor, is

13  currently available in our office.  Anything individually for

14  each defendant, we've sent it to them if we have it in our

15  possession.

16          THE COURT:  Okay, what I'm understanding Mr. Cortez to

17  ask, though, has anything come in since February the 24th?

18          I would suspect, Mr. -- I would bank on the --

19  probably, yes, Mr. Cortez, because you're talking about almost

20  two months' worth of more gathering of information, if anything

21  came in.

22          MR. CORTEZ:  That goes to the issue of scheduling.

23  I'll check with Mr. Paradiso on additional --

24          AUSA PARADISO:  All they have to do, Your Honor, so

25  it's on the record for everybody, if they call our front desk

1   and they ask the person who's sitting there, they'll look and

2   see if anybody's on the docket for that day or whenever they

3   want to come.  If not, they'll put them in for that time and

4   then the room's available and everything's sitting in the room

5   waiting for them to come.

6              MR. CORTEZ:  My next question is:  And whenever --

7   when is discovery going to be complete?  When is everything

8   going to be available?  That's -- that's one of the --

9              THE COURT:  Well, we came -- we came to that -- that

10  was one of the first questions in terms of 99 percent of it is

11  there, although the government is -- from what I understood from

12  what Mr. Torres and Mr. Paradiso was telling the Court,

13  Mr. Paradiso is still trying to get some related reports from

14  local officers, is what I'm understanding.

15             AUSA PARADISO:  Yes, Your Honor.

16             THE COURT:  But 99 percent of it -- is that what you

17  used, Mr. Torres, was the 99 percent --

18             MR. TORRES:  That's my understanding from

19  Mr. Paradiso.

20             AUSA PARADISO:  Yes.

21             THE COURT:  Ninety-nine percent of it is there.

22             MR. CORTEZ:  Okay.  That's fine.

23             THE COURT:  All right.  What -- Mr. Villarreal, did

24  you have a question?

25             MR. VILLARREAL:  I just wanted to clarify.  So it's

1  July 14th?

2         THE COURT:  July 12th would be the status

3  conference --

4         MR. VILLARREAL:  Right.

5         THE COURT:  -- which is -- and then July 14th is the

6  pretrial motions deadline.

7         MR. VILLARREAL:  Thank you, Your Honor.

8         AUSA PARADISO:  And, Your Honor, for the status

9  conference, are you going to want the clients here again or not?

10         THE COURT:  No.  It's just -- it's just the attorneys.

11         AUSA PARADISO:  Okay.

12         THE COURT:  Mr. Paradiso, what I -- what I do want to

13  find out from the government by May the 3rd, with an advisory to

14  the Court, is what steps have been approved by the U.S.

15  Attorney's office in terms of replicating data for other offices

16  and/or the network sharing program.

17         AUSA PARADISO:  Yes, Your Honor, if I'll -- I'll get

18  with Mr. Hudson, I believe, and see what -- if he has any

19  information on which agency was doing that.  And that -- they

20  may be able to help us.

21         THE COURT:  I understand it was the Southern District

22  of Texas U.S. Attorney's Office?

23         MR. HARPER:  Houston.  Yeah, it was a Houston case it

24  was filed in.

25         THE COURT:  Okay.

1          AUSA PARADISO:  I'll -- I'll try and see, Your Honor.

2     That's -- that's the first I've heard about it.

3          THE COURT:  Okay.  Well, advise the Court by written

4     advisory by May the 3rd, because that --

5          AUSA PARADISO:  Yes, Your Honor.

6          THE COURT:  -- might ameliorate calls by the attorneys

7     and having to come to your office.

8          AUSA PARADISO:  Yes, Your Honor.

9          THE COURT:  Ms. Mulliner?

10          MS. MULLINER:  In San Antonio, it's just recently that

11     I've started receiving it.  There's something called USAfx.

12     It's is a federal drop box where you have to sign on and open an

13     account.  But I'll ask for a specific -- specific report and

14     they drop it in that drop box.  I -- I can't print it, but it's

15     there, available to me.  It's done by the prosecutor, not an

16     agency.

17          THE COURT:  It -- it may very well be that, so it may

18     be already be available for everybody to have access to it.  So

19     that would also probably ameliorate Mr. McCarthy's issues as

20     well.

21          AUSA PARADISO:  Yes, Your Honor, and I'll -- I'll look

22     into that.

23          THE COURT:  Okay.  Because the sooner that gets done,

24     Mr. Paradiso, the sooner we're going to know what pretrial

25     motions are going to be filed with the Court, the sooner I can

set pretrial hearings in this matter.

AUSA PARADISO:  Yes, Your Honor.

THE COURT:  Anything else I need to take up at -- yes, sir?

MR. MYERS:  Can we do the 10:30 time for the status conference?

THE COURT:  Yeah.  We -- we can.  We probably -- it probably would be set at that time anyway.

MR. McCARTHY:  I have -- I have one other thing, Judge.

THE COURT:  Uh-huh.

MR. McCARTHY:  Generally if you could tell me how your thoughts are when you handle these cases.  You've done some more here --

THE COURT:  They're all scattered, Mr. McCarthy.

MR. McCARTHY:  On -- on the progress of how we go into -- if there are some, possibly, plea agreements and things like that, people accepting responsibility and sentencing and -- how do you generally --

THE COURT:  I -- I will say this, other than for 1325/1326 cases, I do not accept written acceptance of responsibility statements.  It has to be done orally to probation.  You will be notified by the probation office in terms of dates for interviews, so that if -- if the attorneys want to be present or have a representative present, then that

1   can be scheduled.  Probation will take care of that.

2           The other thing, too, is at the request of the

3   defense bar, when I first took the district bench, probation

4   will not ask specific questions for acceptance of

5   responsibility, other than what you want the Court to know.  So

6   your -- your clients need to be prepared with what statements

7   they're going to give for purposes of acceptance of

8   responsibility.  There will be no follow-up from the probation

9   department.

10          That had been an issue with the defense bar when I

11  took the district bench here, so we changed the format for that

12  purpose.

13          What was your other question?

14      MR. McCARTHY:  As far as on the sentencing, how you

15  anticipate in -- in doing that; together, in a group, or

16  individually or...

17      THE COURT:  I tend to do them individually, especially

18  in these types of cases.  What I do like to do, Mr. McCarthy, is

19  I like to try to keep them all as close together in time so I

20  have a good sense of where the sentences are falling in terms of

21  ranges so that you don't have the lowest person on the -- on the

22  list getting the toughest sentence because they didn't have any

23  information to give.  Not that anyone's cooperating.  I'm not

24  suggesting that.  But what I've noticed is that sometimes low

25  man on the totem pole ends up sometimes with a huge sentence

compared to a higher person on the totem pole.  And when I get

to sentence them roughly around the same week, it's better for

me, it's easier for me to keep track of where the sentencings go

just because I've got 800 and -- 1800 pending defendants and

probably about 1200 pending sentencing right now.

MR. McCARTHY:  All right.

THE COURT:  And I -- and actually I just picked up

another complex case out of Waco with 11,000 wiretap calls.  So,

it -- it's -- so that's why I tend to want to do them together.

These cases don't get to the sentencing stage as

fast as the normal run-of-the-mill cases just because they are

more complex.

Any -- does that answer all of your questions --

MR. McCARTHY:  Yes, it does.

THE COURT:  -- Mr. McCarthy?

Okay.  And in this particular case, if I

remember correctly -- counsel, for those of you that are CJA

that are not normally in this court, that we had to ask you to

join in from other divisions, and even if -- like,

Mr. Villarreal, you're normally here, Mr. Cortez -- in these

particular cases, the vouchers will be done differently because

you will be getting full travel and time from San Antonio to Del

Rio, as opposed to when you volunteer and want me to give you

cases in the Del Rio Division.

So, that -- this case is different.  Keep that in

mind.  We will need a notation on the voucher that it's one of

these cases where we needed your help in this particular case

because of the -- the conflicts from local counsel.

MR. CORTEZ:  I'm sorry, I didn't --

THE COURT:  That would apply to you, too, and --

MR. CORTEZ:  Okay.

THE COURT:  -- Mr. Darwin, even though y'all come to

this docket normally in cases at the request -- you requested

the Court to allow you to practice here.  This case would be

different from those for y'all.

MR. CORTEZ:  Okay.

THE COURT:  Even for y'all, for Mr. Villarreal,

Mr. Moton, you know, those of you that are out of the Del Rio

Division.

Yes, sir?

MR. JUAREZ:  Your Honor, would you be accepting

interim vouchers when it comes to --

THE COURT:  Yes, because it's a complex case, you can

file interim vouchers as well.

This Court, not being used to millions and thousands

in paychecks, is very spooked by zeros.  Just know that.

MR. TORRES:  Fewer zeros, but bigger numbers in front,

Judge; is that what you're saying?

THE COURT:  Spooked.  Just spooked, Mr. Torres.

Remember, I'm a -- I'm a farmer's daughter.  I don't know what

big numbers are.

       MR. TORRES:  It's 2016, Judge.  Time to get with the program.  Just saying.  Thank you, Your Honor.

       THE COURT:  Inflation.

       MR. TORRES:  Yes.

       THE COURT:  Okay.  Anything else?

       Yes, sir?

       MR. CORTEZ:  Have you contemplated --

       THE COURT:  Probably not.

       MR. CORTEZ:  -- accepting 11(c)(1)(C)s?  I mean --

       THE COURT:  No, not in this case.  No one has approached me on any of that.

       And defense counsel that isn't normally in my court, like Mr. McCarthy and Mr. Myers, I am not a big fan of 11(c)(1)(C)s generally, unless it's something along these cases where it would take care of all of the defendants, keep them in proper scope of their conduct, their -- their act in a particular case.  Then I'm more amenable to reviewing 11(c)(1)(C)s.  Generally not a -- a favorite of the Court.  But these cases are a little bit different, take a little more consideration and different kinds of considerations.

       I think on one of the last cases, lowest man on the totem pole decided to go to trial.  He was looking at life and he was the lowest man on the totem pole versus the -- the worst offender that was looking at less -- less time, and that's what

1    I try to avoid in these types of cases.  So that's why -- if I'm

2    looking at 11(c)(1)(C)s, I'm going to look at the whole group as

3    everybody being able to get and agreeing to an 11(c)(1)(c) so I

4    can keep everybody in a proper perspective and scope.

5                Anybody else?  Any other questions?

6                All right.  I will see y'all on July the 12th at

7    10:30 for the status conference.

8                MR. TORRES:  Yes, Your Honor.

9                THE COURT:  May the 3rd for you, Mr. Paradiso, and a

10   written advisory.

11               AUSA PARADISO:  Yes, Your Honor.

12         (11:03:48 A.M., END TIME)

13                                -o0o-

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3

4   U.S. DISTRICT COURT          )

5   WESTERN DISTRICT OF TEXAS )

6   DEL RIO DIVISION             )

7

8           I, Vickie-Lee Garza, Certified Shorthand Reporter, do

9   hereby certify that the above-styled proceedings were reported

10  by me, later reduced to typewritten form, and that the foregoing

11  pages are a true and correct transcript of the original notes to

12  the best of my ability.

13

14          Certified to by me this 4th day of October, 2019.

15

16                            /s/   VICKIE-LEE GARZA
                              TX CSR #9062, Expires 10/31/21
17                            P.O. Box 2276
                              Del Rio, Texas  78841
18

19

20

21

22

23

24

25